J-S32038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN ANTONIO SANCHEZ | : | |
| | : | |
| Appellant | : | No. 73 MDA 2023 |

Appeal from the Judgment of Sentence Entered August 26, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002093-2017

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JANUARY 2, 2024**

Appellant Juan Antonio Sanchez appeals from the judgment of sentence imposed after the trial court convicted him of aggravated assault and related offenses. Appellant's counsel (Counsel) has filed a petition to withdraw and an ***Anders***/***Santiago***[1] brief. After review, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

The trial court summarized the factual history of this case as follows:

On June 11, 2016, Luis Salame, along with his friend "Gordo,"[fn3] was at the auto body shop of William Marrero located in Glenside, Reading, Berks County, Pennsylvania. Gordo borrowed a motorcycle from Mr. Marrero to go riding with Luis Salame, nicknamed "Chewy," who was riding another small motorcycle. The borrowed motorcycle belonged to Mr. Marrero's son Antonio.

---

[1] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

[fn3] The nickname was the only name provided during any trial testimony.

At the intersection of Avenue B and Avenue C [in Reading], Gordo crashed and fell off Antonio's motorcycle, damaging it. William Marrero came to the scene of the crash. Mr. Marrero was upset about the damage to the motorcycle and an argument ensued, causing a crowd to gather. Mr. Salame wanted to return to the garage and fix the motorcycle. [Appellant], who was watching the argument, stated that "if it was him, he would have charged me for the motorcycle right there[.]" [Appellant] and Mr. Salame had never met before this incident.

Mr. Salame, pacing angrily and animatedly around the area, argued with Mr. Marrero and then turned to argue with [Appellant] after he interjected himself into the discussion about the motorcycle. During the verbal argument between Mr. Salame and [Appellant], [Jose Santiago a.k.a.] "Joselito," a friend of Mr. Salame, approached. The three men were arguing in close proximity, with Mr. Salame indicating that he wanted to fight. Mr. Salame was waving his arms and lifted his shirt indicating "he did not have a gun and if there was going to be a fight, to fight like a man." At some point, [Mr. Santiago] pushed [Appellant]. Neither [Mr. Santiago] nor Mr. Salame were armed. [Appellant] pulled out a gun and shot, first at [Mr. Santiago], and then at Mr. Salame, who suffered a gunshot wound to his right leg.

Trial Ct. Op., 4/24/23, at 3-4 (citations omitted and some formatting altered).

Subsequently, the Commonwealth charged Appellant with two counts of aggravated assault, one count of recklessly endangering another person (REAP), and one count of possession of an instrument of crime (PIC).[2]

On January 9, 2018, Appellant filed an omnibus pre-trial motion, which included a motion for a writ of *habeas corpus*. Appellant argued that the Commonwealth had failed to establish a *prima facie* case as to all charges.

_____

[2] 18 Pa.C.S. §§ 2702(a)(1), 2702(a)(4), 2705, and 907(b), respectively.

Appellant's Omnibus Pre-trial Mot., 1/9/18, at 2-3 (unpaginated). The trial court held a hearing January 17, 2018. The Commonwealth presented the testimony of Mr. Salame and a surveillance video. N.T. Omnibus Mot. Hr'g, 1/17/18, at 4-23. At the conclusion of the hearing, the trial court denied Appellant's *habeas corpus* motion. **Id.** at 25.

On January 7, 2019, the trial court held a trial on stipulated facts, including the transcript from the January 17, 2018 hearing and the surveillance video. Appellant argued that he opened fire in self-defense. The trial court initially held its verdict under advisement, and on January 14, 2019, the trial court found Appellant guilty of all counts.

After Appellant failed to appear for the sentencing hearing scheduled on February 13, 2019, the trial court issued a bench warrant. Appellant was eventually arrested in New Jersey and extradited to Pennsylvania. On October 26, 2022, the trial court sentenced Appellant to an aggregate term of four and one-half to twenty-two years' incarceration followed by three years' probation.[3]

---

[3] Specifically, the trial court sentenced Appellant to four to twenty years' incarceration for count one, aggravated assault, a consecutive term of six months to two years' incarceration for count three, REAP, and a consecutive term of three years' probation for count four, PIC. Lastly, the trial court determined that count two, aggravated assault, merged with count one.

Appellant filed a timely motion requesting permission to file a post-sentence motion *nunc pro tunc* on November 28, 2022.[4] The trial court granted Appellant's motion the same day. Appellant filed a timely post-sentence motion *nunc pro tunc* seeking reconsideration of sentence and challenging both the sufficiency and weight of the evidence. Specifically, Appellant argued that his convictions were against the weight of the evidence because he did not have the opportunity to retreat, shot the complainant in self-defense, and the video of the altercation contradicted Mr. Salame's testimony. Post-Sentence Mot., 12/15/22, at 1-2 (unpaginated). The trial court denied Appellant's post-sentence motion on December 23, 2022.

Appellant filed a timely notice of appeal. Appellant and the trial court both complied with Pa.R.A.P. 1925.

_____

[4] A post-sentence motion *nunc pro tunc* will toll the appeal period if the defendant requests permission to file a post-sentence motion *nunc pro tunc* and the trial court explicitly grants the request within thirty days of the imposition of sentence. **Commonwealth v. Dreves**, 839 A.2d 1122, 1128-29, 1128 n.6 (Pa. Super. 2003) (*en banc*).

Appellant's request to file a post-sentence motion *nunc pro tunc* and the trial court's order granting that request were filed within the thirty-day appeal period because the last day of the appeal period fell on Friday November 25, 2022, and the Berks County Courthouse was closed on that day in observation of the Thanksgiving holiday. **See** "2022 Holiday Schedule" https://www.countyofberks.com/getmedia/58f0c308-c22a-4e4f-8cf1-4c5d332d42c0/2022-Holiday-Listing.pdf (last visited Nov. 21, 2023). Accordingly, the last day of the appeal period was Monday, November 28, 2022. **See** 1 Pa.C.S. § 1908 (excluding holidays and weekends from time computations).

Counsel has identified the following issues in the ***Anders***/***Santiago*** brief:

1. Whether the [trial] court erred in denying the post-sentence challenge to the weight and sufficiency of the evidence.

2. Whether the [trial] court imposed an excessive sentence on Appellant, thereby abusing its discretion.

***Anders***/***Santiago*** Brief at 10 (formatting altered).

"When faced with a purported ***Anders***[/***Santiago***] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." ***Commonwealth v. Wimbush***, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant that he has the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an ***Anders***/***Santiago*** brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. ***Commonwealth v. Millisock***, 873 A.2d 748, 751 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the requirements established in **Santiago**, namely:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Goodwin**, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); **accord Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, Counsel has complied with the procedural requirements for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter notifying Appellant of his intent to withdraw, explaining his appellate rights, informing Appellant of his right to proceed *pro se* or with private counsel, and supplying Appellant with a copy of the **Anders**/**Santiago** brief. **See Goodwin**, 928 A.2d at 290. Counsel also provided this Court with a copy of

his letter to Appellant informing him of his rights. Moreover, Counsel's **Anders**/**Santiago** brief complies with the requirements of **Santiago**. Counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Appellant's claim, and sets forth the conclusion that the appeal is frivolous. **See Santiago**, 978 A.2d at 361. Accordingly, we conclude that Counsel has met the technical requirements of **Anders** and **Santiago**, and we will proceed to address the issues presented in Counsel's **Anders**/**Santiago** brief.

## Sufficiency of the Evidence

The first issue identified by Counsel is that the evidence was insufficient to sustain Appellant's convictions because Appellant had presented a defense of justification.[5] **Anders**/**Santiago** Brief at 22-25. Specifically, Appellant contends that he was justified in shooting the complainant, Mr. Salame, in the leg because Appellant was reasonably in fear that one of the other men involved had a gun, he did not have the ability to retreat because he was surrounded, and he did not provoke the confrontation. **Id.** at 23-24.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

_____

[5] Because Appellant challenges both the sufficiency and weight of the evidence, we address the sufficiency of the evidence first. **See Commonwealth v. Spence**, 290 A.3d 301, 308 n.4 (Pa. Super. 2023) (stating that because "a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we shall address this issue first" (citation omitted)).

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

Under the Crimes Code, self-defense is a defense of justification, which is a complete defense to criminal liability. *See* 18 Pa.C.S. § 502. We have explained that

[t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt.

*Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008) (citation omitted).

To disprove a defendant's claim of self-defense, the Commonwealth must establish at least one of the following beyond a reasonable doubt:

1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or

continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the [fact-finder] to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

*Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa. Super. 2005) (citations and quotation marks omitted).

"The complainant can serve as a witness to the incident to refute a self-defense claim. Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a fact-finder is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

[Appellant] alleges he properly raised this affirmative defense and that it was not rebutted by the Commonwealth beyond a reasonable doubt. Specifically, he asserts that he "had reason to believe that at least one of his assailants might have had a gun on him—which, in view of this man's known violent propensities and his history of being guided by undue violent impulses in his use of that gun, gave [Appellant] additional reason for imminent fear of death, especially given the evidence that this particular assailant was aggressively looking for a fight." While [Appellant] does not specify which person to whom he is referring, [Mr. Salame] or [Mr. Santiago], the record is devoid of any knowledge on behalf of [Appellant] as to these purported propensities or history for either of the persons at whom he shot. Mr. Salame was the only fact witness and testified that he had never seen [Appellant] before that day. If [Appellant] was unaware of the alleged reputation and history, if they do in fact exist, they could not be the basis for his belief that he was in imminent danger.

[Appellant's] actions, when viewed in the light most favorable to the Commonwealth, establish each of the crimes of which he was

convicted. As the finder of fact in this matter, this court rejected the self-defense claim put forth by [Appellant]. The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact, who is free to believe all, some, or none of the evidence. [Appellant's] use of the gun in this circumstance was unlawful. After viewing the video and hearing the unrebutted testimony of Mr. Salame, this court found that [Appellant] was the initial aggressor beginning with his verbal intervention into the motorcycle situation, in which he had no personal interest, and his actions continued to escalate and inflame the situation. The video established that [Mr. Salame] was unarmed. The court viewed [Mr. Salame] lift [up] his shirt making his waistline, where a gun would have been concealed, visible. The court found Mr. Salame credible when he testified about his comments about there being a fair fight and that it meant a fist fight. Further, [Mr. Salame] was retreating at the time he was shot by [Appellant]. [Appellant] describes Mr. Salame and [Mr. Santiago] as "frenzied assailants" and the onlookers as a "developing mob," and further that [Appellant's] decision making was "in violent and tempestuous circumstances." However, colorful language is not a substitute for evidentiary support. The video, Commonwealth exhibit 2A, shows that the actors were limited to Mr. Marrero (who had no interaction with [Appellant]), [Mr. Salame], and [Mr. Santiago]. Although there were onlookers, they were not otherwise involved. There is nothing to indicate that if [Appellant] had attempted to retreat, that he would have been stopped by an onlooker.

[Appellant] had no reasonable belief that he was in imminent danger of death or serious bodily injury, to justify escalation to the use of deadly force. [Appellant] provoked the aggression from Mr. Salame and continued to escalate the situation and then failed to retreat from the continued confrontation. [Appellant] could have avoided the necessity of using any force, and more specifically deadly force, with complete safety by retreating. He failed to do so or even to attempt to do so. Instead, [Appellant] chose to draw his weapon and shoot at the retreating [Mr. Salame] and striking him in the rear of his thigh and also potentially endangering bystanders. [Appellant] was properly convicted.

Trial Ct. Op. at 5-7 (citations omitted and some formatting altered).

Following our review of the record, we agree with trial court's conclusions. *See Palmer*, 192 A.3d at 89. As noted by the trial court, the Commonwealth presented evidence that Appellant was the aggressor in the confrontation with Mr. Salame and Mr. Santiago and that Appellant had an opportunity to safely retreat without interference from the onlookers. *See* Trial Ct. Op. at 5-7. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth has disproven Appellant's claim of self-defense beyond a reasonable doubt. *See McClendon*, 874 A.2d 1230; *Bullock*, 948 A.2d at 824. Additionally, this Court will not re-weigh the evidence presented at trial. *See Palmer*, 192 A.3d at 89. Therefore, we conclude Appellant's challenge to the sufficiency of the evidence supporting his convictions based on his justification defense is meritless and no relief is due.

**Weight of the Evidence**

The next issue identified by Counsel is that Appellant's convictions were against the weight of the evidence because Appellant had presented a defense of justification. *Anders*/*Santiago* Brief at 22-24.

In reviewing a weight claim, this Court has explained:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

- 11 -

> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted).

> As this Court has repeatedly stated:
>
> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
>         \*     \*     \*
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Spence*, 290 A.3d at 311 (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight-of-the-evidence claim as follows:

As this was a bench trial, the court was free to accept or reject the various arguments put forth by the Commonwealth and [Appellant] in this case. [Appellant] was the only armed party. The actions of Mr. Salame in lifting his shirt along with his statements about fighting like a man indicated that he was unarmed. While Mr. Salame was agitated, it was directly in response to [Appellant's] unnecessary interference into the already heated discussion over how to handle the motorcycle accident. This court did not find that Mr. Salame was the initial aggressor nor that his actions allowed for the use of deadly force by [Appellant] against him. There was nothing preventing [Appellant] from retreating and leaving the area as he was not involved in the motorcycle accident in any way. Further, the entry of the bullet was to the rear of Mr. Salame's thigh indicating that he was the person retreating at the time the shot was fired.

After reviewing the record, and considering this court sat as the finder of fact, the verdict, while disappointing to [Appellant], is certainly not shocking. The evidence presented at trial was not contrary to the verdict. This issue has no merit.

Trial Ct. Op. at 8-9.

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. *See Gonzalez*, 109 A.3d at 723. We note that credibility determinations and the resolution of conflicting evidence are exclusively within the province of the fact-finder, and that this Court cannot substitute its judgment for that of the fact-finder, instantly, the trial court in a bench trial. *See Spence*, 290 A.3d at 311. The record amply supports the trial court's conclusion that Appellant did not act in self-defense because Appellant was the initial aggressor, and it was possible for Appellant to safely retreat. *See* Trial Ct. Op. at 8-9. Therefore, Appellant is not entitled to relief on his weight-of-the-evidence claim.

**Discretionary Aspects of Sentence**

The final issue identified by Counsel is Appellant's claim that the trial court imposed an excessive sentence without considering mitigating factors. **Anders**/**Santiago** Brief at 20-22. This issue presents a challenge to the discretionary aspects of Appellant's sentence. **See, e.g.**, **Commonwealth v. Ahmad**, 961 A.2d 884, 886 (Pa. Super. 2008) (explaining that "[a] challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence" (citation omitted)).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

**Commonwealth v. Corley**, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised

for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Instantly, Appellant preserved his sentencing issue in a post-sentence motion, a timely appeal, and a Pa.R.Crim.P. 2119(f) statement in the ***Anders***/***Santiago*** brief. ***See Corley***, 31 A.3d at 296. Additionally, we conclude that Appellant has raised a substantial question for review. ***See Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating "an excessive sentence claim-in conjunction with an assertion that the court failed to consider mitigating factors raises a substantial question" (citation omitted)).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

- 15 -

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

> The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> >
> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

*Raven*, 97 A.3d at 1253-54 (some citations omitted and some formatting altered).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all

witnesses firsthand. *See Commonwealth v. Kurtz*, 294 A.3d 509, 536 (Pa. Super. 2023), *appeal granted on other grounds*, --- A.3d ---, 289 MAL 2023, 2023 WL 7123941 (Pa. filed Oct. 30, 2023). In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating factors[.]" *Id.* (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of [the] offense in relation to [the] impact on [the] victim[s] and [the] community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). Additionally, the trial court "must consider the sentencing guidelines." *Id.* at 848 (citation omitted). Where a PSI report exists, this Court will "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa. Super. 2020) (citation omitted). This Court may only disturb a standard-range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. [An a]ppellant is

not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." ***Commonwealth v. Brown***, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citations omitted and formatting altered).

Here, in its Rule 1925(a) opinion, the trial court explained:

There was a [PSI that this court] reviewed prior to imposing sentence. The court considered the that the use of firearms was a serious matter but also indicated that there were no separate aggravating factors. The sentence imposed at each count were standard range sentences. Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. Because [Appellant] created a danger to the bystanders in his discharge of the weapon, the court imposed a consecutive sentence on the charge of recklessly endangering another person. Long standing precedent recognizes that the Sentencing Code affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. The court did not impose impermissibly excessive maximum sentences, as they were within the maximum term provided by statute.

Finally, a bottom of the standard range sentence of probation was imposed for the [PIC] count. [Appellant] was presented with his right to allocution at which time he apologized for his failure to appear at the original sentencing date indicating it was for safety concerns for his family based on the behavior of [Mr. Salame] after the incident, as described by [Appellant's] counsel.

The trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. This is the basis for the broad discretion afforded to trial court judges. When considering the nature and circumstances of the offense and the history and characteristics of [Appellant] and the multiple opportunities the sentencing court had to observe [Appellant], there is no basis to conclude there was an abuse of discretion. The sentence entered in this case is not manifestly excessive nor grossly disproportionate to the actions of [Appellant]. Sufficient reasons for the imposition of the sentence were placed on the record. While the sentence was significant, the court's exercise of

judgment was not manifestly unreasonable when considered in relation to the facts, the guidelines, the allocution of [Appellant], and arguments of counsel.

Trial Ct. Op. at 9-11 (citations and footnotes omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the trial court considered the PSI report before imposing Appellant's sentence. *See* N.T. Sentencing Hr'g, 10/26/22, at 4, 10; *see also* Trial Ct. Op. at 9. Therefore, we presume that the trial court was aware of and weighed mitigating factors. *See Watson*, 228 A.3d at 936; *see also Kurtz*, 294 A.3d at 536. On this record, we have no basis upon which to conclude that the trial court's application of the guidelines was "clearly unreasonable" or that the trial court abused its discretion in structuring Appellant's sentences consecutively. *See* 42 Pa.C.S. § 9781(c)(2); *Brown*, 249 A.3d at 1216.

For these reasons, we agree with Counsel's assessment that the claims presented in the *Anders*/*Santiago* brief are frivolous. Further, our independent review of the record does not reveal any additional, non-frivolous issues. *See Flowers*, 113 A.3d at 1250; *see also Goodwin*, 928 A.2d at 291. For these reasons, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/2/2024